## V. C. MORGAN v. THE STATE.

No. 11124.   Delivered November 23, 1927.

**1.—Wife and Child Desertion—Statute Construed.**

"It was never the contemplation of the statute under which this prosecution is brought that one 'should be punished as a criminal and incarcerated in jail because of his inability to pay a fine, or simply because he did not contribute to the support of his wife.  One who is unable to work, or who, being able to work is unable to obtain work, and for either of these reasons fails to contribute to the support of his wife could hardly be said to have willfully deserted or failed to support her.  See Smith v. State, 263 S. W. 913, and other cases cited.

**2.— Same — Requested   Charges — On   Defensive   Theory — Erroneously Refused.**

While appellant's defense, supported by evidence, was that his wife had refused to live with him on the farm, where it was necessary for him to abide to earn a livelihood, and had abandoned him and moved to Dallas to live, the court erred in refusing his requested charges presenting this defense.

Appeal from the County Criminal Court of Dallas County. Tried below before the Hon. N. G. Williams, Judge.

Appeal from a conviction for wife and child desertion, penalty a fine of $50.00.

The opinion states the case.

*Oscar Calvert* of Dallas, for appellant.

*A. A. Dawson,* State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Wife and child desertion is the offense, punishment fixed at a fine of $50.00 and confinement in the county jail for a period of 180 days.

The following is a synopsis of the state's testimony, coming in the main from the wife of the appellant:  The marriage took place in January, 1925; the separation occurred October 15, 1926.  The prosecution began November 18, 1926.  There was a son, Charles A. Morgan, eighteen months old, and birth to another child was expected.  At the time of the marriage the appellant was hired as a truck driver.  They lived in Dallas for a time and then moved to Oklahoma and engaged in farming upon a rented premises, but in the spring of 1926 the floods destroyed the crop and they returned to Dallas.  After a short time, during which the appellant was again employed as a truck driver, they moved to the farm of Mr. Hufhines, near Richardson, about ten miles from Dallas.  The wife, by reason of her

pregnancy, was unable to work at the time of the separation, and she and the baby were without means of support and were cared for by the Welfare Department of the City of Dallas.

The appellant testified, as did his mother and brother. In substance their testimony is this: At the time of the marriage the appellant was 20 years of age. He had been reared on a farm and had no training in any other vocation except that he knew how to drive a truck. That vocation being insufficient to support himself and his wife, they went to Oklahoma and engaged in farming, but having the misfortune to lose his crop, they returned to Dallas during the summer of 1926, and he took up the same line of employment in which he was engaged at the time of the marriage, namely, that of driving a truck. Finding the salary inadequate to support himself and wife, they moved on a farm in August, 1926, which was in possession of his brother, and engaged in day labor, picking cotton and other farm work. At that time he was without means or property of any kind. The older brother of the appellant was in possession of a 300-acre farm which he rented from Mr. Hufhines and appears to have been a man with credit and property. He subleased to the appellant a 50-acre tract of land and gave him a house in which to live and sufficient household furniture for housekeeping, and also gave him sufficient credit with the merchants in the neighborhood to enable him to live until he could make a crop, which he was endeavoring to do upon the 50-acre tract of land mentioned. The wife of the appellant was dissatisfied and, according to some of the testimony, used violent words and conduct toward the appellant's mother and brother. She declared that she would not live upon the farm and insisted upon returning to Dallas. Finally, at the request of the appellant, his brother took her to a place in Dallas, which she designated. Appellant there followed or accompanied her and there stayed for several days, and, according to his testimony, endeavored to persuade her to return to the farm where he would be surrounded with the only means available for a livelihood. She declined to go, and he went back to the farm and also went to Louisiana, where he stayed for some four weeks picking cotton. After that time he returned to the farm where it seems he was making a crop at the time of the trial. There was testimony showing that in the year 1926 financial conditions were difficult for tenant farmers; that the banks would not lend them money; and that the crop prospects were poor and day labor hard to obtain. Appellant testified that he had endeavored to borrow money with which to provide for his wife. Several

witnesses testified to his good reputation as a law-abiding citizen. Some of them testified that while living upon his farm, the table of the appellant appeared to be sufficiently supplied with food; and that his family was provided with the necessaries of life. The tools which he used upon the farm belong to his brother.

As to the unfortunate situation in which the young couple find themselves, and particularly the predicament which is forced upon the appellant by the judgment from which this appeal is taken, the remarks of this court through Judge Lattimore in the case of Smith v. State (263 S. W. 913) have some bearing:

"It was never the contemplation of the statute under which this prosecution is brought that one should be punished as a criminal and incarcerated in jail because of his inability to pay a fine or simply because he did not contribute to the support of his wife. One who is unable to work, or who, being able to work, is unable to obtain work, and for either of these reasons fails to contribute to the support of his wife, could hardly be said to have willfully deserted or failed to support her."

See Verse v. State, 81 Tex. Crim. Rep. 48; Joiner v. State, 81 Tex. Crim. Rep. 524; Dickey v. State, 82 Tex. Crim. Rep. 154; Scciocca v. State, 99 Tex. Crim. Rep. 582; Lamm v. State, 85 Tex. Crim. Rep. 48; Mercardo v. State, 86 Tex. Crim. Rep. 559; Otto v. State, 98 Tex. Crim. Rep. 549; Elms v. State, 99 Tex. Crim. Rep. 500.

The court instructed the jury upon the offense as defined in the statute, but presented no defensive theory except to tell the jury that the innocence of the appellant was presumed until overcome by the evidence beyond a reasonable doubt. Appellant excepted to the charge of the court and presented a number of special charges seeking to have the jury instructed upon various defensive theories which he claimed arose from the facts. One of these asked for the converse of the charge on willful desertion; another was to the effect that if the appellant was unable to make a living in the city but believed that by going to the country and working on a farm he could better his position, but that she declined to live with him on the farm, that he would not be guilty. Another was that if he was financially unable to support his wife in the city and that she was unwilling to go to the country to live with him where he could, by arrangements with members of his family, maintain them, he would not be guilty. Another charge was that

affirming the right of the husband to select the domicile, and that if he chose his domicile on the farm and his wife refused to live with him there, that he would not be guilty of abandoning her.

The statute upon which the conviction rests denounces willful desertion, neglect or refusal to provide for the support and maintenance, etc. (Art. 602, P. C., 1925.) The several defensive theories to which we have adverted bear upon the essential elements of the offense. From the testimony of both the state and the appellant the question whether there was a willful dereliction was the main issue before the jury to be determined, but in the charge of the court there was no guide other than the mere definition of the offense and the term "willful." In response to the exceptions to the court's charge and request for special charges, the court was not justified in refusing to instruct the jury touching the defensive theories as pointed out in the paragraph of this opinion outlining the exceptions to the court's charge and the request for special charges.

For the reasons stated the judgment is reversed and the cause remanded.                    *Reversed and remanded.*